IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LISA M. SMITH, individually and in her capacity as Executrix and Personal Representative of the Estate of Shawn A. Smith (deceased), | ) ) ) ) | Case No. 7:22-cv-588 |
| | ) | By:    Michael F. Urbanski |
| Plaintiff, | ) | Chief United States District Judge |
| | ) | |
| v. | ) ) | |
| MATTHEW W. JENNINGS, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendants' motion to dismiss, ECF No. 15, and plaintiff's motion to strike, ECF No. 18. The court heard argument on the motions on March 23, 2023. ECF No. 31. For the reasons discussed below, the court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss. The court **GRANTS** plaintiff's motion to strike.

### I.   Factual Background

The following facts are taken from the amended complaint and are construed as true for purposes of this motion. Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th Cir. 2017) ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

On November 26, 2021, Shawn Smith began experiencing a mental health crisis in his home in Roanoke. Am. Compl., ECF No. 4, ¶¶ 17–20. He "became despondent and

threatened to commit suicide." Id. ¶ 20. In response, his wife Lisa Smith went to a neighbor's house at 6:30 p.m. to ask for help and to call 911 to obtain mental health assistance for her husband. Id. ¶ 21. In response to her call, Roanoke County Police Department (RCPD) officers went to the neighbor's home, picked up Lisa, and brought her to the magistrate's office in Salem in order to obtain an Emergency Custody Order (ECO) for Shawn. Id. ¶ 22. At 7:49 p.m., the magistrate issued an ECO requiring law enforcement to transport Shawn to Lewis Gale Medical Center for psychiatric evaluation. Id. ¶ 24.

However, before the magistrate issued the ECO, RCPD deployed officers to the Smiths' home without Lisa's knowledge. Id. ¶ 25. Officers arrived in police vehicles and entered both Smith and the neighbor's property without explanation. Id. ¶ 26. While some officers stood outside the front of the Smiths' house and shouted that Shawn was under arrest, other officers stood behind the house and shouted that he was not under arrest. Id. ¶ 28. Shawn opened a window and told the officers to leave. Id. ¶ 29. He also exited his home several times to ask the officers to leave. Id. ¶ 30. At no point did Shawn have a gun, which he told the officers. Id. ¶¶ 31–32.

Defendant Officer Matthew Jennings positioned himself in a neighbor's yard, armed with a high-powered rifle that he aimed at the Smiths' screened-in porch. Id. ¶ 39. The porch was attached to the Smiths' home. Id. At around 7:52 p.m., Shawn opened the door of his house that was attached to the screened-in porch and began speaking with Jennings. Id. ¶¶ 41–43. Shawn told Jennings that he did not have a gun, nor did he verbally or physically threaten the officer. Id. ¶¶ 44–45. At this time, Shawn and Jennings were about 50 feet apart. Id. ¶ 45. For Shawn to reach Jennings, he would have had to "walk across the screened porch, open

the screen door, descend the stairs to his driveway, cross the width of his driveway to the neighbor's yard, and then locate Jennings," who was "hidden . . . in the dark." Id. ¶ 46. Plaintiff alleges that Jennings then, without warning or reasonable basis, fired two shots at Shawn, which hit him in the neck. Id. ¶¶ 47, 50. Plaintiff further alleges that Jennings did not see Shawn with a firearm. Id. ¶ 48. Once Jennings fired the shots that hit Shawn, he entered the home and placed Shawn in handcuffs. Id. ¶ 52. Plaintiff alleges that another officer stated that "goddamn . . . .there wasn't a gun" once Shawn was lying on the ground. Id. ¶ 56. Shawn subsequently died from the gunshot wounds. Id. ¶ 53.

Plaintiff alleges that when Jennings attempted to explain why he had shot Shawn, his Commander, Jeffrey Johnson, and another officer told him to stop speaking and hire a lawyer. Id. ¶¶ 58–60. Police also took Lisa Smith, who had still been at the courthouse in Salem, to the Roanoke County Police Department headquarters and interrogated her for almost two hours. Id. ¶¶ 62–63. The police allegedly told Lisa initially that they did not know what had happened to her husband, and then later told her that he had died, but that they did not know his cause of death. Id. ¶¶ 65–66. Then, over the course of several days, officers executed four search warrants of the Smiths' home, truck, and electronic devices. Id. ¶ 68. The first warrant was issued for "murder," seeking the identity, manner, and location of Shawn's death. Id. ¶¶ 69–74. Officers seized several items of property belonging to the Smiths. Id. ¶¶ 77–82. When plaintiff attempted to get information from the officers regarding who killed Shawn, defendants "refused to provide the name of the officer." Id. ¶ 85. Plaintiff filed a request pursuant to the Virginia Freedom of Information Act to obtain this information, and

eventually the matter went before the Circuit Court for the City of Roanoke on October 31, 2022. Id. ¶¶ 85–87. The court ordered defendants to provide Jennings' name. Id. ¶ 88.

At some point, police questioned Jennings about the shooting, and Jennings stated that he had prepared a typed statement about the shooting two days after Shawn's death. Id. ¶ 89. Plaintiff alleges that the officers, police department, and the county failed to obtain this statement. Id. ¶ 90. Further, plaintiff's counsel attempted to obtain all use-of-force reports concerning Jennings pursuant to FOIA, but the police and county refused on the basis that the reports were part of Jennings' personnel file. Id. ¶ 94.

As the appointed Executrix and personal representative of Shawn's estate, Lisa Smith brought suit against defendants Officer Jennings, individually and in his official capacity as a police officer of the RCPD; Howard Hall, in his official capacity as the Chief of Police of Roanoke County; Roanoke County; and the Roanoke County Police Department (RCPD). She brings several claims pursuant to 42 U.S.C. § 1983, alleging violations of Smith's Fourth and Fourteenth Amendment rights, claims under the Virginia Constitution, and Virginia state law claims for wrongful death. Defendants filed a motion to dismiss, ECF No. 15, and an accompanying memorandum, ECF No. 16, which are ripe for the court's consideration.

## II. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [the motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Beacon Wireless Solutions, Inc. v. Garmin Intern., Inc., No. 5:11-cv-00025, 2011 WL 4737404, at *7 (W.D. Va. Oct. 5, 2011) (quoting McBurney v. Cucinnelli, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part)) (second alteration in original). "Thus, the proper inquiry is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims." Id. (internal quotation marks and alteration omitted).

Defendants filed a motion to dismiss the complaint in its entirety for several reasons. ECF No. 15. The court will address the arguments grouped by defendants.

### A. Claims Against Officer Jennings

Defendants move to dismiss Counts II, III, V, VII, and VIII, which contain allegations against defendant Jennings, in both his official and individual capacity, of federal and state law violations. The court will take each in turn.

As an initial matter, however, the court will **GRANT** the motion to dismiss claims against Jennings to the extent that they name him in his official capacity. As the Supreme Court has explained, "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" McMillian v. Monroe Cnty., 520 U.S. 781, 785 (1997) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Plaintiff concedes that claims against Jennings in his official capacity are duplicative of those against Roanoke County. ECF No. 19, at 12. Accordingly, the following analysis pertains to the claims against Jennings in his individual capacity.

### 1. Defendants' motion to dismiss plaintiff's Fourth Amendment excessive force claim (Count II) against Officer Jennings is denied.

Defendants argue that plaintiff fails to state a claim against Officer Jennings for use of excessive force in violation of the Fourth Amendment. The court disagrees. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." Graham v. Connor, 490 U.S. 386, 395 (1989). In determining whether an officer's use of force is excessive, the court looks to whether his actions were objectively reasonable given the circumstances at the moment that the force occurred. Brosseau v. Haugen, 543 U.S. 194, 197 (2004). When assessing reasonableness, the court must afford "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

Bumpass v. Birkhead, No. 1:21-cv-394, 2022 WL 943727, at *7 (M.D.N.C. Feb. 28, 2022) (quoting Graham, 490 U.S. at 396). Deadly force is only reasonable when an officer has probable cause to believe that an individual "poses a threat of serious physical harm, either to the officer or to others." Ingle v. Yelton, 264 F. App'x 336, 340 (4th Cir. 2018) (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). Even if an individual is armed, an officer can reasonably use deadly force only if the officer or another individual is threatened by the weapon. Cooper v. Sheehan, 735 F. 3d 153, 159 (4th Cir. 2013).

The court considers three factors when determining reasonableness of force. The Fourth Circuit refers to these as the "Graham factors," noting that they derive from Graham v. Connor. We look to "the severity of the crime at issue"; "the extent to which 'the suspect poses an immediate threat to the safety of the officers or others'"; and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892 (4th Cir. 2016) (quoting Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015)).

In this case, plaintiff alleges that Officer Jennings used excessive force when he shot and killed the decedent. Accepting the alleged facts as true, the first Graham factor favors plaintiff. Smith did not commit a crime nor did the officers have probable cause to arrest him. In fact, some officers indicated to Smith that he was under arrest, while others did not. "When the subject of a seizure 'ha[s] not committed any crime, this factor weighs heavily in [the subject's] favor.'" Id. at 899 (quoting Bailey v. Kennedy, 349 F.3d 731, 743–44 (4th Cir. 2003)). See also id. ("[T]he severity of the crime cannot be taken into account because there was no crime." (quoting Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005)). However, the Fourth

Circuit has noted that the first Graham factor is "intended for a proxy for determining whether 'an officer [had] any reason to believe that [the subject of a seizure] was a potentially dangerous individual.'" Id. (quoting Smith, 781 F.3d at 102). While the complaint alleges that Smith committed no crime, there was a legal basis for his seizure: his wife had called 911 for mental health assistance. This requires the court to consider Smith's mental health—and potential dangerousness—as one of the "facts and circumstances" that a "reasonable officer on the scene" would assess. Graham, 490 U.S. at 396. "Where a seizure's sole justification is preventing harm to the subject of the seizure, the government has little interest in using force to effect that seizure." Armstrong, 810 F.3d at 900–01; see Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003) ("[When] a mentally disturbed individual not wanted for any crime . . . [i]s being taken into custody to prevent injury to himself[,] [d]irectly causing [that individual] grievous injury does not serve th[e officers'] objective in any respect."). On the face of the complaint, Jennings had enough information at the scene to know that, while Smith was experiencing mental health issues, he was not posing a danger in that moment. The first Graham factor weighs heavily against the use of deadly force. The justification for Jenning's presence did not justify the degree of force.

The second and third factors—the extent to which the suspect poses an immediate threat to the safety of the officers or others and whether the suspect is actively resisting the seizure—also weigh in plaintiff's favor. The complaint alleges that at the time that Jennings shot Smith, he was neither a danger to others nor to the officers. Based on his wife's 911 call and the circumstances of the scene, the only person that he was a possible danger to, in that moment, was himself. He was inside the home or the screened porch at all times; he told the

officers that he was unarmed; and he was 50 feet away from Jennings. This contrasts with Smith v. Town of South Hall, 611 F. Supp. 3d 148 (E.D. Va. 2020), for example, where officers were confronted with an individual dealing with a mental health crisis who had "talked about killing" and "refused to exit the driver's seat of a running car." Id. at 174. At that point, the court noted that "the officers could reasonably have believed [him] to be a threat to both their safety and to the safety of others." Id. In Armstrong ex rel. Armstrong v. Village of Pinehurst, the court found some justification for use of force against a mentally ill individual who was "wandering into traffic with little regard for avoiding passing cars," was "only a few feet away from an active roadway," and gave reason to believe that he would "try to flee into the street . . . thereby endangering himself and individuals in passing cars." Armstrong, 810 F.3d at 901. He was also actively resisting the seizure. Id. Here, the officers did not have reason to believe that Smith would or could harm others; Smith told them he was not armed; the only resistance he was exhibiting was refusing to exit his own home; and he was too far from the officers to be a danger to them, especially unarmed. These factors both weigh in plaintiff's favor as well.

In their motion to dismiss, defendants argue that plaintiff "fails to allege sufficient facts for the court to treat [the excessive force] claim as anything more than a conclusory allegation" and that, "as a matter of law," Jennings' use of force was reasonable. ECF No. 16, at 11, 8. However, defendants argue this based on a very different set of facts than the complaint sets forth. At the motion to dismiss stage, the court must presume the truth of plaintiff's well-pleaded factual allegations and make all reasonable inferences in favor of plaintiff. Through this lens, the court concludes that there are ample facts suggesting Jennings' use of deadly

force was not proportional to the set of circumstances. Therefore, plaintiff has sufficiently alleged that Jennings violated Smith's Fourth Amendment rights when he shot and killed Smith.

Defendants next argue that Jennings is entitled to qualified immunity against plaintiff's Fourth Amendment excessive force claim. The court finds this argument unpersuasive. Application of the qualified immunity doctrine "requires a two-step approach, under which a court first must decide whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the police officer's actions violated a constitutional right." Myers v. Balt. Cnty., 713 F.3d 723, 731 (4th Cir. 2013). If the plaintiff clears this first hurdle, the court next determines whether the right at issue was "clearly established" at the time of the alleged violation "such that it would be clear to an objectively reasonable officer that his conduct violated that right." Id.

As discussed above, plaintiff has sufficiently alleged that Jennings violated Smith's Fourth Amendment rights to survive a motion to dismiss. With regard to the second prong, the Fourth Circuit has made clear that "the right allegedly violated must be defined 'at a high level of particularity.'" Braun v. Maynard, 652 F.3d 557, 562 (4th Cir. 2011) (quoting Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007)). Controlling authority must have "given officers fair warning that their conduct was wrongful." Williamson v. Stirling, 912 F.3d 154, 187 (4th Cir. 2018) (internal quotations and citations omitted). However, officials are still considered on notice in certain "novel factual circumstances" if an official "could [not] have failed to appreciate that his conduct violate[s an individual's] rights." Meyers, 713 F.3d at 731–34. Defendant argues that no existing precedent would have put Jennings on notice that use

of deadly force under the facts alleged could violate the Fourth Amendment. The court disagrees. Plaintiff alleges that Smith told Jennings that he was not armed; that he was not threatening officers or others; and that he was separated by a screen door and 50 feet of distance. Under the circumstances alleged, no officer could reasonably believe that deadly force was necessary. Rather, deadly force is only reasonable when an officer has probable cause to believe that an individual—even an armed individual—"poses a threat of serious physical harm, either to the officer or to others." Ingle v. Yelton, 264 F. App'x 336, 340 (4th Cir. 2018) (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). Given the allegations in the amended complaint, Jennings has not established that he is entitled to qualified immunity at the pleading stage. The motion to dismiss Count II is **DENIED**.

## 2. Defendants' motion to dismiss plaintiff's Fourteenth Amendment claim (Count III) against Officer Jennings is granted.

Defendants argue that plaintiff's Fourteenth Amendment claim should be dismissed because the Fourteenth Amendment does not apply to the facts alleged in the case, and that the Fourth Amendment is the proper vehicle for asserting use of force claims. ECF No. 16, at 14. The court agrees. "[W]here a particular Amendment provides an explicit textual source of constitutional protection, against a particular sort of governmental behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham, 490 U.S. at 395). Claims for excessive force under § 1983 are properly asserted under the Fourth Amendment—not the Fourteenth. See id. at 275; Graham, 490 U.S. at 394. To the extent that plaintiff's claim asserts Fourteenth Amendment due process claims, dismissal is appropriate. To the extent that the complaint alleges other Fourteenth Amendment violations, such as the

right to liberty and the right to be free from unlawful detention and imprisonment, dismissal

is also appropriate because plaintiff has not provided factual allegations specific to those claims

and separate from the excessive force claim. The motion to dismiss Count III is **GRANTED**.

### 3. Defendants' motion to dismiss plaintiff's claims against Officer Jennings under the Virginia Constitution (Count VII) is granted.

Plaintiff brings a claim for state constitutional violations against Jennings, specifically

for "depriv[ing] [him] of his rights, privileges, and immunity secured by the Virginia

Constitution including but not limited to the right to life, liberty, pursuit of happiness, and

equal protection." Compl., ECF No. 4, ¶ 160. While the complaint does not specifically cite

to the relevant provision of the Virginia Constitution at issue, it suggests he alleges a violation

of Article I, § 11; see also Opp. Mot. Dismiss, ECF No. 19, at 8 (citing Article I, § 11).

"Because the due process protections afforded under the Constitution of Virginia are co-

extensive with those of the federal constitution, the same analysis will apply to both." Shivaee

v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005). Article I, § 11 is analogous

to the Fourteenth Amendment due process provisions in the United States Constitution, so

the court finds that this claim should be dismissed. As discussed above, see Part I.A.2, general

due process claims are not the proper vehicle to bring excessive force claims. Thus, dismissal

of due process claims under the Virginia Constitution is appropriate. The motion to dismiss

Count VII is **GRANTED**.

### 4. Defendants' motion to dismiss plaintiff's claims against Officer Jennings for wrongful death (Count V) should be denied.

Plaintiff claims that Jennings was "negligent, grossly negligent, reckless, willful and

wanton, and/or intentional" in his shooting of Smith without justification or excuse, in

violation of Va. Code § 8.01-50 (Wrongful Death Act). Compl., ECF No. 4, ¶ 140. Defendants move to dismiss this claim, asserting that the shooting was legally justified. ECF No. 16, at 21–22.

Under Virginia's wrongful death statute, a plaintiff bringing a wrongful death action must establish that the decedent's death was caused by a "wrongful act, neglect, or default." Va. Code § 8.01-50(A). A "wrongful act imports lack of justification or excuse" under Virginia law. McLenagan v. Karnes, 27 F.3d 1002, 1007–08 (4th Cir. 1994). In this case, as explained above, the allegations in the complaint do not establish that the shooting was justified as a matter of law. Plaintiff alleges that Jennings shot Smith while knowing that Smith was not armed, a substantial distance away, and posing no threat to the safety of the officers or others. These allegations, taken as true, suggest a lack of justification for the shooting.

Defendants also argue that Jennings is entitled to sovereign immunity against the state law claim. They argue that because he is an employee of Roanoke County, "which is absolutely immune in tort," he is immune when his actions involve "discretion and judgment." ECF No. 16, at 21. The court disagrees. While it is true that under Virginia law, an employee may derive immunity from his governmental employer, it is neither "co-extensive" or absolute. Dowdy v. Pamunkey Regional Jail Auth., 3:14-cv-003, 2014 WL 2002227, at *4 (E.D. Va. May 15, 2014). Messina v. Burden, 228 Va. 301, 312, 321 S.E.2d 657 (1984), sets out the test for determining whether an employee is immune. The court must look to "(1) the nature of the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control exercised by the state over the employee, and (4) whether the alleged negligent act involved judgment and discretion." Id. at 663 (citation omitted).

However, "[r]egardless of whether they work for cities, counties, towns, or other entities, individual employees have immunity only from simple negligence claims. They do not have immunity from intentional torts, or torts involving gross negligence or willful and wanton negligence." Dowdy, 2014 WL 200227, at *4. Following the same logic as to why Officer Jennings is not entitled to qualified immunity for the Fourth Amendment claim, the actions alleged appear to exceed simple negligence. See Cromartie v. Billings, 298 Va. 294, 298, 837 S.E.2d 247, 254 (2020) ("[Defendant] is not protected by sovereign immunity, however, because his actions exceeded simple negligence. . . . [B]ecause settled, indisputable law forbade [his] actions, he is not protected by the scope of sovereign immunity."); id. at 299 ("Because [defendant's] search was performed contrary to well-established law and violated [plaintiff's constitutional] rights, it exceeded simple negligence.").

Thus, plaintiff has sufficiently pleaded a wrongful death claim against Jennings, making dismissal of Count V inappropriate. The motion to dismiss Count V is **DENIED**.

### 5. Plaintiff's claim for punitive damages against Officer Jennings (Count VIII) is not subject to dismissal at this stage.

Defendants move to dismiss plaintiff's request for punitive damages in Count VIII of the complaint. Plaintiff responds that Rule 12(b)(6) does not allow for dismissing a specific remedy, including punitive damages. The court agrees. "[P]unitive damages are not a 'cause of action' subject to dismissal under Rule 12(b)(6)." Charles v. Front Royal Volunteer Fire & Rescue Dept., Inc., 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (quoting Rathbone v. Haywood Cnty., No. 1:08-CV-117, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008)). Because "a demand for relief is not part of a plaintiff's statement of the claim," the type of relief sought is irrelevant "to the question of whether a complaint adequately states a claim upon which

relief can be granted." Id. (citing  Alexander v. Se. Wholesale Corp., 978 F. Supp. 2d 615, 624 n.7 (E.D. Va. 2013) &  Int'l Fid. Ins. Co. v. Mahogany, Inc., No. CIV. JKB–11–1708, 2011 WL 3055251, at *2 n.1 (D. Md. June 25, 2011)).

"[Rule] 54 underscores the impropriety of dismissing requests for punitive damages under [Rule] 12(b)(6)." Oppenheimer v. Sw. Airlines Co., No. 13–CV–260–IEG BGS, 2013 WL 3149483, at *4 n.1 (S.D. Cal. June 17, 2013). Because Rule 54(c) directs courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," it "makes little sense to require detailed factual allegations to support a demand for certain damages when such damages may ultimately be awarded even if they were never pled in the complaint." Id. at *4 n.1 (citations omitted); Fed. R. Civ. P. 54(c). Thus, defendants' motion to dismiss plaintiff's claim for punitive damages is premature. The motion to dismiss Count VIII is **DENIED**.

### B.  Claims Against Roanoke County Police Department

Defendant argues that the RCPD is not a proper party to this suit on any of the alleged claims. Plaintiff concedes this, explaining in her opposition that she agrees that RCPD "does not have the capacity to be sued." ECF No. 19, at 21. The court agrees. Under Rule 17 of the Federal Rules of Civil Procedure, the capacity to be sued, where the party is not an individual or corporation, must be established by state law. Fed. R. Civ. P. 17(b)(3). "In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." Ross v. Franklin Cnty. Dep't of Soc. Servs., 186 F. Supp. 3d 526 (W.D. Va. 2016) (citing Muniz v. Fairfax Cnty. Police Dep't., No. 1:05–cv–00446, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005)). Because Virginia law has

not "vested" the police department with the "capacity to be sued," the court treat claims against Virginia municipal police departments as claims against the municipalities themselves. Gardner v. Town of Blacksburg, No. 7:13-cv-000054, 2013 WL 2490513, at *2 (E.D. Va. 2013) (citing Hearn v. Hudson, 549 F. Supp. 949, 952 n.1 (W.D. Va. 1982) ("It appears that nothing in Virginia law recognizes municipal police departments as entities separate from their respective municipalities. Nor does anything in Virginia law support a direct action against a police department as an entity separate from the municipality itself.")). Accordingly, the motion to dismiss all claims against RCPD is **GRANTED**.

### C. Claims Against Roanoke County

Defendants argue that the claims against Roanoke County must be denied either because plaintiff failed to state a claim or because it has immunity from suit. The court will take each argument in turn.

### 1. Plaintiff's claim against Roanoke County for violations of the Fourth and Fourteenth Amendment (Count I) is denied in part and granted in part.

Plaintiff alleges that defendant Roanoke County violated Smith's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Reading the complaint in the light most favorable to plaintiff, she alleges the existence of an unconstitutional policy or custom on three theories: establishment of an inadequate policy or custom for dealing with subjects experiencing mental health issues; failure to properly hire, supervise, or train officers; and condonation of Officer Jennings' conduct. Compl., ECF No. 4, ¶ 103–114.

In the leading case of Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local government units are included "among those persons to whom § 1983 applies." Id. at 690.

Municipalities and local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. Plaintiffs must meet three requirements to prevail on a Monell claim. First, the plaintiff must plausibly allege that the constitutional injury resulted from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell, 436 U.S. at 694); see also Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987). A "policy or custom" can present in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). Next, the plaintiff must allege facts that show the policy is attributable to the municipality. Spell, 824 F.2d at 1389; see Owens v. Balt. City State's Att'y's Off., 767 F.3d 379, 402 (4th Cir. 2014) ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act" necessary to succeed on a Monell claim). And finally, the plaintiff must allege an affirmative and causal connection between the "policy or custom" and the constitutional injury at issue. Spell, 824 F.2d at 1389.

Based primarily on the allegation that between May 1, 2021, and September 18, 2021, nine use-of-force reports had been filed against Officer Jennings, five of which involved him

pointing a firearm at a subject, ECF No. 4, ¶ 8., plaintiff has plausibly alleged that Roanoke County condoned the use of force that led to Smith's death. A municipality is liable under a condonation theory "if municipal policy makers fail 'to put a stop to[,] or correct[,] a widespread pattern of unconstitutional conduct.'" <u>Owens</u>, 767 F.3d at 402 (quoting <u>Spell</u>, 824 F.2d at 1389). Plaintiff must allege a "'persistent and widespread practice[ ] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" <u>Id.</u> at 402 (quoting <u>Spell</u>, 824 F.2d at 1386–91 (alterations omitted)). While prevailing on this claim is challenging, "simply alleging a claim is, by definition, easier." <u>Id.</u> at 403. That reports regarding Jennings' use of force were filed indicate "actual and constructive knowledge of the conduct," <u>Owens</u>, 767 F.3d at 402. A factfinder may be able to infer a failure to correct Jennings' excessive force usage by the sheer number of reports over the course of a short period of time and that, despite his record, defendant sent him to Smith's home with a firearm during a mental health incident. This "brief [] but non-conclusory [] allegation" is sufficient to survive a motion to dismiss. <u>Id.</u> at 403. Thus, to the extent that plaintiff asserts <u>Monell</u> liability for a Fourth Amendment violation on a condonation theory, the motion to dismiss is **DENIED**. For the same reasons explained in Part II.A.2, the Fourteenth Amendment is not the proper vehicle for excessive force claims. The motion to dismiss the claim for a Fourteenth Amendment violation is **GRANTED**.

### 2. Wrongful death claim against Roanoke County (Count IV)

Plaintiff brings a claim for wrongful death against Roanoke County, alleging it is "directly and vicariously liable for the negligent and/or intentional misconduct of Officer

Jennings, [its] employees, agents, and law enforcement officers pursuant to Virginia law and the common law of respondeat superior." ECF No. 4, ¶ 4. Defendant argues that this claim should be dismissed because Roanoke County is absolutely immune under sovereign immunity. The court agrees.

"It is well established that the doctrine of sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions." Niese v. City of Alexandria, 264 Va. 230, 234, 564 S.E.2d 127, 132 (Va. 2002) (citation omitted). A municipality "acts in its governmental capacity in . . . maintaining a police force." Id. Therefore, "a municipality is immune from liability for a police officer's negligence in the performance of his duties as a police officer." Id. at 132. This also applies for "liability for intentional torts committed by an employee during the performance of a governmental function." Id. at 133; see also Booker v. City of Lynchburg, 6:20-cv-00011, 2020 WL 4209057, at *10 (W.D. Va. July 22, 2020) ("A municipality is immune from [tort] liability for the actions of a police officer undertaken during the performance of his law enforcement duties and from liability arising out of the municipality's role in maintaining its police force."). Roanoke County is thus immune from state law tort liability. The motion to dismiss Count IV is **GRANTED**.

### 3. Virginia Constitution claim (Count VI)

Plaintiff alleges that Roanoke County is liable for violations of Smith's rights under Article I, § 11 of the Virginia Constitution. As discussed above, see Part I.A.2, general due process claims are not the proper vehicle to bring excessive force claims. Thus, dismissal of due process claims under the Virginia Constitution is appropriate. The motion to dismiss Count VI is **GRANTED**.

### D. Claims Against Chief Hall

Counts I, IV, and VI of the complaint name Roanoke County Chief of Police Howard B. Hall, in his official capacity, as a defendant. Defendants argue that these claims should be dismissed because they are duplicative of the claims against Roanoke County. ECF No. 16, at 34. Plaintiff concedes this point in her opposition to the motion to dismiss. ECF No. 19, at 30. The court agrees. As explained above in reference to the official capacity claims against Jennings, "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" McMillian v. Monroe Cnty., 520 U.S. 781, 785 (1997) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Therefore, the court will **GRANT** the motion to dismiss the official capacity claims against Chief Hall to the extent that he is named as a separate defendant from Roanoke County.

### E. Claim against John Does

Plaintiff brings in her own right a claim against Jennings and John Does 1-7 for violation of her Fourth Amendment rights to be free from unreasonable searches and seizures (Count IX). The claim relates to the allegations of searches performed after Smith's death. While it appears that defendants move to dismiss the complaint in its entirety, Count IX is not addressed in their motion to dismiss, ECF No. 15, their supporting memorandum, ECF No. 16, nor in their reply to plaintiff's opposition, ECF No. 21.[1] For this reason, the court will **DENY** the motion to dismiss Count IX.

---

[1] While defendants do refer to "Count IX" in their memorandum supporting their motion to dismiss, they appear to be discussing what is actually Count VIII. ECF No. 16, at 24 ("[T]o the extent that Count IX attempts to assert a separate cause of action for punitive damages . . . , Officer Jennings requests that this Court dismiss Count IX to the extent that it purports to assert a separate cause of action or numbered Count or convert it, simply, to a request for relief . . . ."); see Compl., ECF No. 4, at 28 (Count VIII titled as "Claim for Punitive Damages Pursuant to Virginia Law Against Defendant Matthew W. Jennings").

### III.   Motion to Strike

Plaintiff moves to strike three documents that defendants filed with their motion to dismiss: 1) a document entitled "Authentication of Records Pursuant to Virginia Code § 8.01-390"; 2) a news release from the Roanoke County Police Department regarding Smith's death; and 3) a letter from Roanoke County Commonwealth's Attorney stating his opinion that Smith's death was "justified under the laws of the Commonwealth of Virginia." ECF No. 18, at 1–2. Plaintiff argues that these documents should be stricken from defendant's motion.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.L. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the complaint if they are "integral to the complaint" and there is no dispute regarding their authenticity. Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the complaint" where the complaint "relies heavily upon its terms and effect . . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). A document must have "independent legal significance to [plaintiff's] claim" in order to be integral. Id. (quoting Smith v. Hogan, 794 F.3d 249, 255 (2d Cir. 2015)).

The evidentiary documents that defendants attach to their motion to dismiss are just that—evidentiary. The "News Release," ECF No. 16-1, at 2–3, contains Chief Howard Hall and Roanoke County Commonwealth's Attorney Brian Holohan's description of the events in question. The letter from Attorney Holohan, id. at 4–8, contains his legal opinion of one

version of the events in question (the letter does not specify the source(s) of his description of the facts). These documents have no independent legal significance to plaintiff's claim. They are substantially different than, for example, "[a] pleading's reference to . . . a part of a fully integrated and authentic contract," which would itself "incorporate[ ] the contract as a whole into the complaint." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015); see also Walker v. S.W.I.F.T. SCRL, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (explaining that an integral document is one that by its "very existence, and not the mere information it contains, gives rise to the legal rights asserted"). As the Fourth Circuit has explained,

> [t]he purpose for which [a] document is offered is particularly important where the document is one prepared by or for the defendant. Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff. Treating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it for purposes other than truthfulness, would be "contrary to the concept of notice pleading" and "would enable parties to hide behind untested, self-serving assertions."

Goines, 822 F.3d at 168 (quoting N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 456 (7th Cir.1998)). These documents, prepared by defendants or those affiliated with defendants, run exactly this risk. The motion to strike is **GRANTED**.

## IV. Conclusion

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss. The court **GRANTS** plaintiff's motion to strike.

It is **SO ORDERED**.

Entered: June 10, 2023

Michael F. Urbanski
Chief U.S. District
Judge

Digitally signed by Michael
F. Urbanski      Chief U.S.
District Judge
Date: 2023.06.10 12:19:31
-04'00'

Michael F. Urbanski
Chief United States District Judge