CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
June 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| LISA M. SMITH, individually and in her capacity as Executrix and Personal Representative of the Estate of Shawn A. Smith (deceased), | ) ) ) ) | |
| | ) | Case No. 7:22-cv-588 |
| Plaintiff, | ) ) | By:   Michael F. Urbanski Chief United States District Judge |
| v. | ) ) | |
| MATTHEW W. JENNINGS and ROANOKE COUNTY, VIRGINIA, | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

This matter is before the court on plaintiff Lisa M. Smith's objections to Magistrate Judge C. Kailani Memmer's February 13, 2024, discovery orders, ECF Nos. 150, 151, and April 2, 2024, order granting defendant Matthew W. Jennings' motion to strike portions of the Second Amended Complaint, ECF No. 162. Pl.'s Objs., ECF Nos. 156, 170. The court held a hearing on Smith's objections on May 23, 2024.

## I.  BACKGROUND

Smith initiated this action on October 14, 2022, against Roanoke County, Virginia, and several others[1] for the alleged wrongful killing of her husband Shawn Smith on November 26, 2021. Compl., ECF No. 1. She filed an amended complaint on December 16, 2022, to name Officer Jennings as the police officer who fired the shots that killed Shawn Smith. Am. Compl.,

---

[1] Officer Matthew Jennings, who killed Smith, was unnamed in the initial complaint, listed with seven others as John Does.

ECF No. 4. The amended complaint asserted nine causes of action: (1) a Monell[2] claim against the Roanoke County Police Chief, Roanoke County Police Department, and Roanoke County, Virginia (the "County defendants"); (2) a 42 U.S.C. § 1983 claim against Jennings for Fourth Amendment violations; (3) a § 1983 claim against Jennings for Fourteenth Amendment violations; (4) a Virginia wrongful death claim against the County defendants; (5) a Virginia wrongful death claim against Jennings; (6) a Virginia constitution claim against the County defendants; (7) a Virginia constitution claim against Jennings; (8) a claim for punitive damages under Virginia law against Jennings; and (9) a § 1983 claim against seven John Does for Fourth Amendment violations. Am. Compl., ECF No. 4.

On June 12, 2023, the court granted in part defendants' motion to dismiss, dismissing several claims and defendants. Mem. Op. and Order, ECF Nos. 56, 57. On November 20, 2023, Smith sought leave to file a second amended complaint, ECF No. 120, which the Magistrate Judge granted during a hearing on February 6, 2024, ECF No. 144. The second amended complaint dismissed the John Does, leaving only Jennings and Roanoke County as defendants in the action. Second Am. Compl., ECF No. 120-1. Four claims remain: (1) a Monell claim against Roanoke County, Virginia; (2) a § 1983 claim against Jennings for Fourth Amendment violations; (3) a Virginia wrongful death claim against Jennings; and (4) a punitive damages claim under Virginia law against Jennings. Id.

The Magistrate Judge heard argument regarding several discovery motions on February 6, 2024, including Smith's motion for leave to take additional depositions (ECF No. 100); Smith's motion to file discovery on the docket (ECF No. 125); Smith's motion to amend the

---

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

scheduling order (ECF No. 131); Smith's motion to compel defendants to cooperate in scheduling depositions (ECF No. 136); Smith's fourth motion to compel discovery (ECF No. 135); and Jennings' motion to quash or modify several subpoenas (ECF No. 118).

The Magistrate Judge ruled on Jennings' motion to quash or modify 15 non-party document subpoenas (ECF No. 118) and Smith's fourth motion to compel discovery (ECF No. 135) by two written orders following the hearing, on February 13, 2024. Orders, ECF No. 150, 151. Smith filed objections to both orders. ECF No. 156.

On February 21, 2024, defendants moved to strike portions of the second amended complaint. ECF No. 153. After the issue was fully briefed, the Magistrate Judge ruled on the motion by written order on April 2, 2024, granting in part and denying in part the motion. Order, ECF No. 162. Smith filed a third amended complaint on April 3, 2024, ECF No. 169, and filed objections to the Magistrate Judge's order regarding the motion to strike on April 16, 2024, ECF No. 170.[3] Jury trial is currently set for September 30, 2024.

The court held a hearing on plaintiff's objections on May 23, 2024. Following oral argument, the court directed counsel for defendants to provide to the court copies of certain documents relevant to the court's decisional analysis, including depositions transcripts for Matthew Jennings, Nathaniel Jennings, Williams Jennings, Angel Keffer, and Spencer Lewis.

---

[3] On April 10, 2024, defendant Roanoke County filed a motion to dismiss the Third Amended Complaint for failure to state a claim, ECF No. 166, and defendant Jennings filed an Answer, ECF No. 168. However, on April 17, 2024, Smith filed a motion asking that the court stay her deadline to oppose the motion to dismiss until after the court rules on her objections to the Magistrate Judge's ruling on the motion to strike, given that if the court sustains the objections regarding the motion to strike, the motion to dismiss will need to be re-briefed. ECF No. 171. On April 25, 2024, the Magistrate Judge granted the motion, ordering that Smith's response to Roanoke County's motion to dismiss is due 10 days after the court rules on Smith's objections to the Magistrate Judge's order regarding the motion to strike. ECF No. 175. This memorandum opinion and accompanying order provides a schedule for the filing of a Fourth Amended Complaint and responsive pleadings.

The court also directed counsel for defendants to provide for <u>in</u> <u>camera</u> review the Internal Affairs materials that defendants' expert, Dr. Ron Martinelli, referenced in his report (or to instead confirm that the report has been produced to plaintiff) and provide the April 18, 2022, text message conversation between Jennings and Chelsea Wingate that is referenced in plaintiff's objections, ECF No. 156, at 5. Following careful review of those documents, along with the parties' arguments made both in briefing and at the May 23, 2024, hearing, the court now turns to plaintiff's objections to the Magistrate Judge's orders.

## II. STANDARD OF REVIEW

Because the rulings at issue are non-dispositive, the court's consideration of Smith's objections is governed by Federal Rule of Civil Procedure 72(a). Under this rule, the court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Minyard Enters., Inc. v. Se. Chem. & Solvent Co.</u>, 184 F.3d 373, 380 (4th Cir. 1999) (quoting <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." <u>In re Eli Lilly & Co. v. Novartis Pharma AG</u>, 580 F. Supp. 3d 334, 337 (E.D. Va. 2022) (internal citation omitted).

## III.   DISCUSSION

### A.  February 13, 2024, Discovery Orders

Smith filed objections to certain rulings contained in the Magistrate Judge's February 13, 2024, discovery orders granting in part Jennings' motion to quash or modify 15 non-party document subpoenas, ECF No. 150, and denying Smith's fourth motion to compel discovery, ECF No. 151. The court takes each in turn.

### 1. Order Granting in Part Jennings' Motion to Quash (ECF No. 150)

On November 10, 2023, Jennings filed a motion to quash or modify 15 third party document subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iv) because the entities subpoenaed and the records requested are not relevant to the case or germane to any claim or defense raised by either party. Def.'s Mot., ECF No. 118. Jennings argued that the subpoenas seek records regarding "every aspect" of Jennings' life, including, for example, academic records from the high school and community college he attended, employment records from past employers, and information regarding his personal bank accounts. Def.'s Mem. Supp., ECF No. 119, at 3–4.

In the February 13, 2024, order, the Magistrate Judge first reasoned that Jennings has standing to challenge the non-party subpoenas by construing the motion to quash as a motion for a protective order under Rule 26(c)(1) (as opposed to a Rule 45 motion to quash), noting that "[c]ourts in this District have ruled that motions to quash subpoenas directed at third parties can be viewed as motions for protective orders under Federal Rule of Civil Procedure 26(c)(1)." Order, ECF No. 150, at 2 (citing Wheeler v. Commonwealth, No. 7:17-cv-337, ECF No. 110, at *2 (W.D. Va. Sept. 13, 2018) (Ballou, J.)). The Magistrate Judge further stated that

even if she did not construe the motion as a motion for a protective order, Jennings still has standing to challenge the subpoenas because Jennings has "some personal right or privilege in the information sought" by the subpoenas. Order, ECF No. 150, at 2, 3 n.3 (citing U.S. v. Idema, 118 Fed. App'x 740, 744 (4th Cir. 2005)). The Magistrate Judge then proceeded to rule on the motion with respect to each of the 15 subpoenas.

Smith objects to the Magistrate Judge's order on the basis (1) that the Magistrate Judge improperly relied on the Wheeler decision to construe Jennings' motion as a motion for a protective order, and (2) that the only grounds for quashing a Rule 45(d)(3)(A)(iv), the rule under which the motion to quash was brought, is burden, and none of the subpoena recipients complained of burden here.

In Wheeler, a defendant issued a document subpoena to plaintiff's current employer for her employment records. Wheeler, ECF No. 110, at *2. Plaintiff filed a motion to quash or modify the subpoena, arguing that the subpoena seeks irrelevant information and that she has already provided her employment dates and compensation records to defendant. Judge Ballou construed plaintiff's motion as a motion for a protective order but denied the motion because the motion did not include a certification that the movant had attempted in good faith to resolve the dispute before bringing it to the court. Id. at *2–3.

Smith argues that, because the court denied plaintiff's motion in Wheeler, reliance on that decision is inappropriate. Smith's attempt to distinguish Wheeler is meritless, and the Magistrate Judge appropriately cited to Wheeler as an example of a court applying Fourth Circuit precedent to construe a party's motion to quash a non-party document subpoena as a motion for a protective order. The Wheeler court's ultimate decision to deny the motion on

6

the basis that the parties failed to confer before bringing the dispute to the court's attention is irrelevant.

Smith's other basis for objecting to the Magistrate Judge's order also fails. She argues that the only grounds for quashing under Rule 45(d)(3)(A)(iv) is burden, and none of the subpoena recipients complained of burden here. Wheeler addresses this as well. Once a court construes a motion to quash under Rule 45 as a motion for a protective order under Rule 26, the analytical framework through which the court assesses the motion for a protective order is Rule 26. Wheeler, ECF No. 110, at *2 ("A protective order is subject to the restrictions of Rule 26 rather than Rule 45."). Accordingly, the Magistrate Judge did not err by assessing the motion for a protective order on grounds other than burden that are appropriate under Rule 26, such as relevance.

The court concludes that the Magistrate Judge's order granting in part Jennings' motion to quash, ECF No. 150, was not clearly erroneous or contrary to law. Out of an abundance of caution, however, the court will require two of the subpoenaed individuals—Nathaniel Jennings (defendant's brother) and Angel Keffer (defendant's fiancée)—to review their cell phones and determine whether defendant Matthew Jennings texted them in the six months following November 26, 2021, about the shooting.

The court bases this decision on its review of the depositions of Nathaniel Jennings, Angel Keffer, and William Jennings (defendant's father). None of these three family members recalled any text messages exchanged with defendant Jennings about the shooting. N. Jennings Dep. 27:14–16; Keffer Dep. 66:13–15; W. Jennings Dep. 27:6–15. However, Nathaniel Jennings testified that his brother "sent me news articles, . . . but we haven't gone into any

detail of it." N. Jennings Dep. 27:11–13. Angel Keffer testified that she could not remember any text messages from Matthew Jennings about the incident but could not be 100% certain. Keffer Dep. 66:13–67:5. In contrast, William Jennings testified that he did not usually text with his son, and "[i]f we did, it was something short like 'where are you' or 'call.'" W. Jennings Dep. 27:6–11.

Given this testimony, and pursuant to the subpoenas issued to them, Nathaniel Jennings and Angel Keffer are **DIRECTED** to review their cell phones and determine whether they have any text messages with defendant Matthew Jennings in the six months after November 26, 2021, that are in any way related to the shooting and provide those text messages, if any, to defendant's counsel for review and production to plaintiff. In all other respects, plaintiff's objections to the Magistrate Judge's order regarding the non-party subpoenas are **OVERRULED**.

### 2. Order Denying Smith's Fourth Motion to Compel Discovery (ECF No. 151)

On January 11, 2024, Smith filed her fourth motion to compel discovery. ECF No. 135. The motion pointed to twelve alleged deficiencies in Jennings' discovery responses. Following a two-hour hearing, the Magistrate Judge issued an order evaluating each of the claimed deficiencies and denying the motion. Order, ECF No. 151.

Smith objects to the Magistrate Judge's order with respect to four of the requests: (1) that Jennings produce his cellphone for forensic examination at Smith's expense or produce all of the text messages that concern the shooting, (2) that Roanoke County produce

the policies and training materials regarding officers' obligations under <u>Brady</u>[4] and <u>Giglio</u>[5], and that Jennings produce his emails in native format so that Smith may determine when he disposed of his old laptop; (3) that Roanoke County produce the results of the Internal Affairs investigation conducted regarding Shawn Smith's death, and (4) that the court reopen the deposition of Commander Lewis because Jennings' counsel instructed him not to answer certain questions. Pl.'s Objs., ECF No. 156.

### i.   Jennings' Text Messages and Cellphone Records

In Smith's third motion to compel discovery, ECF No. 78 (filed Aug. 17, 2023), Smith requested that counsel review all of Jennings' texts to find any that relate to the shooting, and Jennings opposed on the basis that the volume of texts was too voluminous to be reasonably searched. On September 25, 2023, following a hearing, the court granted Smith's request for Jennings to produce his text messages regarding the incident, ordering Jennings and his counsel "to review his cell phone records and identify any additional text messages relating to the incident from November 26, 2021, to April 2022." Order, ECF No. 102, at 2–3. Jennings filed a motion to reconsider the court's order, which the court denied on October 27, 2023. Order, ECF No. 117.

Jennings, by counsel, has represented that he complied with the order, as counsel spent fifteen hours reviewing his cell phone and turned over eight additional pages of messages. ECF No. 137, at 4. In her fourth motion to compel, Smith now argues that the only way to

---

[4] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[5] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

ensure that there are no additional text messages is to order a forensic examination of Jennings'

phone. ECF No. 135. The Magistrate Judge rejected the request, stating,

> The Court takes Jennings's counsel at her word that she has
> reviewed and subsequently produced all relevant text messages
> pursuant to this Court's order, ECF No. 102. This Court does
> not look favorably upon negative insinuations about the integrity
> of counsel on either side of this litigation. No matter how high
> the stakes are—and it is undisputed that they are high in this
> case—there is never good reason to forego civility and respect.
> The Motion will be denied as to the request for Jennings's text
> messages.

Order, ECF No. 151, at 3.

The Magistrate Judge's conclusion that a forensic evaluation of the old cell phone is

unnecessary is neither clearly erroneous nor contrary to law. Counsel for Jennings represented

that the data was transferred from Jennings' old cell phone to his new one and that she was

able to review his text messages during the six-month period following the November 26,

2021, incident on the old cell phone as ordered by the court. However, Jennings' counsel is

**DIRECTED** to confirm whether the text message data on his old cell phone during the six

months following the November 26, 2021, incident was indeed transferred to his new cell

phone.

Moreover, Jennings' counsel is **DIRECTED** to confirm whether her review of his cell

phone included deleted text messages. If counsel's earlier review did not include deleted text

messages sent or received in the six months following the November 26, 2021, incident,

counsel is **DIRECTED** to review the deleted text messages to determine whether any are

responsive to plaintiff's discovery requests. If counsel is unable to review the phone to

determine if any responsive text messages were deleted, counsel is **DIRECTED** to engage a

forensic cell phone expert to gain access to deleted text messages relating to the November 26, 2021, incident and provide responsive information to plaintiff. The period to be reviewed is the six months following November 26, 2021.[6]

Finally, at the May 23, 2024, hearing, the court directed Jennings' counsel to produce for in camera review the complete thread of text messages with Chelsea Wingate referenced in plaintiff's objections, ECF 156, at 5. Defense counsel represents that the Wingate text thread has three pages, the first two of which have been produced to plaintiff. Defs.' Status Rep., ECF No. 182, ¶ 3. The court has reviewed the third page of this text thread in camera and finds that it contains nothing relevant to the issues in this case and is neither discoverable nor admissible in evidence.

### ii. Jennings' Native Email Files and Roanoke County Police Department's Policies Regarding Obligations Under Brady and Giglio

Smith has requested from defendants two sets of documents stemming from an incident in which Jennings discarded his broken laptop after the shooting. Smith, through counsel, has relentlessly pursued this laptop narrative because Jennings prepared his investigation statement on the laptop and then threw it away after it broke. Smith argues that she is now unable to search that laptop for other versions of the statement.

First, Smith requested that defendants produce "all records concerning the obligation to disclose Brady and Giglio information within the context of a criminal prosecution." ECF No. 135, at 14. Smith argues that such records are relevant to proving Jennings' familiarity

---

[6] To the extent that Smith also objects to the Magistrate Judge's ruling regarding Smith's request for Jennings' cell phone purchase records, the court finds that the ruling of the Magistrate Judge is not clearly erroneous nor contrary to law as the date upon which Jennings obtained a new cell phone is immaterial to this case because counsel for Jennings represents that she was able to review Jennings' text messages during the six months following the November 2021 incident and produce them to plaintiff.

with the preservation of evidence as it relates to his decision to discard his laptop. Id. However, in deposition, Jennings testified that he was aware of his duty to preserve evidence and of his obligations in criminal cases imposed by the Brady and Giglio decisions. M. Jennings Dep. 124:22–125:16. Further, Roanoke County Police Commander Spencer Lewis testified that Jennings was not asked by the police department to preserve his computer. Lewis Dep. 78:19–24. As such, the Magistrate Judge's conclusion that Roanoke County's Brady and Giglio policies are not relevant is not clearly erroneous or contrary to law. However, out of an abundance of caution, the court **ORDERS** defendants to go a step further and produce any Roanoke County Police Department policies regarding preservation of electronic evidence to plaintiff.

Second, Smith requested "in native format all emails sent or received between Jennings and officers of the Roanoke County Police Department during the period December 3, 2021, until the present" so that Smith could figure out exactly when Jennings discarded the laptop, which Smith claims presents an issue impacting his credibility. ECF No. 135, at 15. For this request, the Magistrate Judge concluded that these records are not relevant because the "laptop is a non-issue in this case and should not be pursued further. Jennings, by counsel, represented previously and again at oral argument on the Motion that he provided Smith with the pertinent statement and draft statement that were written on the laptop." Order, ECF No. 151, at 6. The Magistrate Judge concluded that "these emails and the timing of when the laptop 'broke' are irrelevant to the claims and defenses in this case." Id.

In defendants' subsequent Status Report, ECF No. 182, defense counsel represents that Roanoke County presently has no way of determining from its email data when Jennings

stopped using the laptop he discarded. Both Jennings and his fiancée, Angel Keffer, were questioned at length in their depositions about this issue. As such, it does not appear that there is any extant information related to determining when the laptop was discarded that the court may order either defendant to produce.

### iii. Results of the Internal Affairs Investigation

Smith requested that Roanoke County produce "all reports, conclusions and other documents reflecting the results of any Internal Affairs investigation into the conduct of Officer Jennings and other officers of the Roanoke County Police Department concerning the incident that occurred the night of November 26, 2021, resulting in the killing of Shawn Smith." ECF No. 135, at 17. Roanoke County opposed on the basis that the results are protected by the deliberative process privilege. The Magistrate Judge declined to address the issue of deliberative process privilege, instead concluding that the results of the investigation are not relevant to the litigation. Order, ECF No. 151, at 7–8.

However, counsel for Smith argued at the May 23, 2024, hearing that, since the Magistrate Judge issued the order on February 13, 2024, defendants produced an expert witness report from Dr. Ron Martinelli, in which he indicated that he had reviewed certain Internal Affairs materials. Smith asks that the court compel production of the Internal Affairs documents that Dr. Martinelli reviewed but that have not been produced to Smith—namely, files referred to as "Internal Investigations Complaint" and "IA File 21-13."[7] Plainly, any

---

[7] Smith has documented this concern, among others, in a fifth motion to compel. Pl.'s Mot., ECF No. 179, at 2–3. That motion has not yet been fully briefed and is pending before the Magistrate Judge, on referral under 28 U.S.C. § 636(b)(1)(A).

Internal Affairs documents provided to defendants' expert witness are discoverable by plaintiff.

In defendants' Status Report, filed on May 31, 2024, ECF No. 182, and defendants' response in opposition to Smith's fifth motion to compel, filed on June 3, 2024, ECF No. 184, counsel for defendants represent that both "IA File 21-13" and the "Internal Investigations Complaint" have now been produced to plaintiff, via the Court's box folder that was set up following the May 23, 2024, hearing.[8] These materials include a February 25, 2022, Roanoke County Police Department Memorandum regarding Internal Investigations Complaint 21-13. However, the court does not know whether this is the final Internal Investigations report or whether there are other responsive materials related to the Roanoke County Internal Investigations report for which Roanoke County is still asserting the deliberative process privilege. Accordingly, in order to assess Roanoke County's argument that it need not produce "all reports, conclusions and other documents reflecting the results of any Internal Affairs investigation" related to the November 26, 2021, incident on the basis that they are protected by the deliberative process privilege, the court **ORDERS** that, if any Internal Affairs records exist concerning the November 26, 2021, incident that are responsive to Smith's discovery requests but have not been produced to plaintiff on the grounds that they are protected by the deliberative process privilege, defense counsel is **DIRECTED** to provide those materials to the court for in camera review.

---

[8] Defense counsel represents that documents titled "IA File" and "Internal Investigations Complaint" were contained within "IA File 21-13," which have now been produced to plaintiff.

### iv. Reopening Commander Lewis' Deposition

Smith seeks to reopen the deposition of Roanoke County Police Commander Spencer Lewis because, during his deposition, Smith's counsel began a line of questioning related to another police shooting that occurred in 2016, and Jennings' counsel objected and directed Commander Lewis not to answer certain questions on the basis that a motion for a protective order on the issue was forthcoming.

The Magistrate Judge denied the request to reopen the deposition, reasoning that,

> Jennings, by counsel, represented to this Court that Smith was aware that he would be filing a motion for a protective order related to the subject matter of the questioning. ECF No. 137 at 3. It is permissible for counsel to instruct a witness not to answer a deposition question in anticipation of a motion for a protective order barring questions presented in bad faith, or to embarrass, annoy, or harass the deponent. Fed. R. Civ. P. 30(c)(2). While no such motion has yet been presented to the Court, it was not improper under the circumstances for Jennings's counsel to instruct Commander Lewis not to answer the questions asked.

Order, ECF No. 151, at 3.

Smith objects to the Magistrate Judge's ruling on the basis that Jennings never filed a motion for a protective order (the deposition was held six months ago, on November 20, 2023) and that, regardless, counsel may not instruct a witness not to answer questions unless to assert a privilege.

The court has reviewed the deposition of Commander Spencer Lewis and finds the ruling of the Magistrate Judge concerning the specific questions asked about the identity of police officers involved in a 2016 police involved shooting not to be clearly erroneous or contrary to law. The questions posed to Commander Lewis that were objected to centered around the identity of police officers involved in a different police involved shooting death in

February 2016, more than five years before the incident in this case. Certainly, discovery may be obtained from Jennings as to whether he was involved in that incident or other incidents of use of force. Further, as to the <u>Monell</u> claim, plaintiff is entitled to seek discovery on the Roanoke County Police Department's policy or custom regarding use of force and whether the 2016 incident prompted any review of or changes to its use of force policies. To the extent that the objections and direction not to answer at the Lewis deposition hampered this legitimate inquiry, the deposition of Lewis may be reopened for that limited purpose.

### B. Order Granting in Part Defendants' Motion to Strike Portions of the Second Amended Complaint (ECF No. 162)

On February 21, 2024, defendants filed a motion to strike portions of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f), on the basis that they contain immaterial, impertinent, and scandalous matter. Defs.' Mot. to Strike, ECF No. 153. Smith opposed, ECF No. 158, and defendants filed a reply in support, ECF No. 161. On April 2, 2024, the Magistrate Judge issued a written order, evaluating each portion of the complaint that defendants requested be stricken. Order, ECF No. 162. On April 16, 2024, Smith filed objections to the Magistrate Judge's order, arguing (1) that the Magistrate Judge ignored well-established law that motions to strike are generally disfavored, (2) that defendants waived their ability to challenge certain portions of the complaint when they agreed to allow Smith to file the second amended complaint,[9] and (3) that the Magistrate Judge erred in striking certain portions of the complaint for lack of relevance. Pl.'s Objs., ECF No. 170.

---

[9] Smith argued that defendants' motion to strike is improper because they agreed to Smith's filing of the second amended complaint and, in so doing, "implicitly agreed that the filing . . . would not be futile, and that it would not be prejudicial to Defendants." Pl.'s Objs., ECF No. 170, at 6–7. The Magistrate Judge rejected this argument, finding that, in agreeing to the filing of the Second Amended Complaint, "Defendants did not provide a blanket assent to the contents of the Second Amended Complaint." Order, ECF No. 162, at 3.

Upon careful consideration of the applicable law regarding motions to strike—including the Fourth Circuit's observation that "striking a portion of a pleading is a drastic remedy" and, as such, motions to strike are "generally viewed with disfavor," Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001)—along with a close review of the pleadings and the Magistrate Judge's ruling, the court **SUSTAINS** plaintiff's objections to the Magistrate Judge's order striking paragraphs 14–17, 31, 40, 42, 47–49, 76, 80–95, and 98–142 under Rule 12(f) of the Federal Rules of Civil Procedure. While it is yet to be seen whether evidence supporting these allegations will survive a Rule 56 motion or be admissible at trial, these factual allegations do not rise to the level of "redundant, immaterial, impertinent, or scandalous matter" required to support a Rule 12(f) motion to strike.

The court **OVERRULES** the objections as to paragraphs 50 and 74 and agrees with the Magistrate Judge that portions of those paragraphs should be stricken. First, paragraph 50 opens with an editorial comment, "None of this is funny, however," rather than an allegation of fact. The court agrees with the Magistrate Judge that the phrase "None of this is funny, however" in paragraph 50 should be stricken. Second, the objection to the Magistrate Judge's order striking paragraph 74 is overruled, as that paragraph is both irrelevant and unnecessarily graphic.

In paragraphs 76–146 of the Second Amended Complaint, plaintiff alleges a police cover up of the shooting. Second Am. Compl., ECF No. 120-1. The Magistrate Judge struck all but nine of these allegations (¶¶ 77–79, 96–97, and 143–146), finding them "immaterial to

---

"Instead, the Defendants agreed that the Second Amended Complaint should be filed and subsequently requested two weeks in which to file responsive pleadings. . . ." Id. The court finds that this ruling is not clearly erroneous or contrary to law.

the claims at issue in this case, as well as scandalous because each one improperly casts a derogatory light on the Defendants."  Order, ECF No. 162, at 13. The court disagrees with the Rule 12(f) ruling.

Plaintiff argues that the events following the shooting set forth in paragraphs 76–146 of the Second Amended Complaint are relevant to her claim of liability under Monell that defendants condoned or ratified Jennings' conduct. See Second Am. Compl., ECF No. 120-1, ¶ 154 ("Defendant Roanoke County condoned, ratified, and justified the killing of Shawn Smith."). Plaintiff argues that "[c]ondoning or ratifying a subordinate's unconstitutional acts may also impute liability to the municipality," citing Starbuck v. Williamsburg James City Cty. Sch. Bd., 28 F. 4th 529, 534 (4th Cir. 2022), in support. Pl.'s Objs., ECF No. 170, at 17.

Starbuck involved the suspension of a student based on the exercise of First Amendment rights and the ratification of that suspension by the school board. The court stated:

> [W]hen a final policymaker has the authority to review the decision of a subordinate, its approval of that allegedly unconstitutional decision can also give rise to liability under Section 1983. Under this theory of liability, if the School Board ratified the suspension of a student by subordinates, the School Board would be liable for any deprivation of constitutional rights caused by that suspension.

Starbuck, 28 F.4th at 534 (citations omitted). As the Fourth Circuit has since recognized, however, such a ratification theory is inappropriate in a case alleging excessive use of force by a police officer because the constitutional violation is caused by the exercise of the force, and subsequent approval by the municipality of the use of force following an investigation "cannot undo what is done." Franklin v. City of Charlotte, 64 F. 4th 519, 537 (4th Cir. 2023). As this

18

court recently stated in <u>Brown v. City of Lynchburg</u>, No. 6:23-cv-054, 2024 WL 2724191, at

*9 (W.D. Va. May 28, 2024) (Moon, J.), "[t]he approval, after the fact, of excessive force cannot

create ratification liability because it is not the source of the injuries." <u>See</u> <u>also</u> <u>Jackson v. Town</u>

<u>of Farmville</u>, No. 3:22-cv-729, 2023 WL 3871697, at *7 (E.D. Va. June 7, 2023) ("[E]ven if

Jackson had identified a final policymaking authority that had decided not to discipline Officer

Coblentz, the decision of that individual or entity could not undo the constitutional violation

he allegedly suffered from Coblentz's excessive use of force. Thus, the failure to discipline

Officer Coblentz did not cause Jackson's injury and is not a decision that can support a

ratification theory for <u>Monell</u> liability.").

Defendants also disagree with plaintiff's ratification theory, arguing as follows:

> There are no facts alleged that show that the County condoned
> or ratified any unconstitutional excessive force by its officers. The
> allegations, as a practical matter, show that the County conducted
> an investigation, issued search warrants, seized evidence, and
> interviewed witnesses – which do not show deliberate
> indifference, ratification, or condonation. Likewise, the
> allegations in this complaint are related to a single alleged
> unconstitutional act, which does not show a pattern or practice
> sufficient to give rise to a policy or custom. Even a generous
> reading of the facts cannot lead to a <u>Monell</u> claim.

ECF No. 161, at 12–13.

While this disagreement may support a Rule 12(b)(6) or eventual Rule 56 challenge, it

does not provide the basis for striking the pleadings under Rule 12(f). As this court observed

in <u>Bocock v. Specialized Youth Servs. of Virginia, Inc.</u>, No. 5:14-cv-050, 2015 WL 1611387,

at *3 (W.D. Va. Apr. 10, 2015) (Dillon, J.),

> As the Ninth Circuit discussed in <u>Whittlestone, Inc. v. Handi-</u>
> <u>Craft Co.</u>, 618 F.3d 970, 974 (9th Cir. 2010), an interpretation of
> Rule 12(f) that would allow dismissal of all or part of a claim

19

> would create redundancies within the Federal Rules of Civil
> Procedure because Rule 12(f), and either Rule 12(b)(6) or Rule
> 56, would be alternative vehicles for the same relief. Such a
> redundancy would be particularly troublesome because the
> standards of appellate review are different.

Thus, it does not appear that plaintiff's ratification theory, premised on conduct which took place after the constitutional violation occurred, states a <u>Monell</u> claim. In that regard, the Magistrate Judge's observation that the seventy or so paragraphs that describe what the Roanoke County Police Department did following Shawn Smith's shooting are immaterial is spot on. However, simply because these allegations may prove to be immaterial to the legal issues in this case does not make them scandalous and subject to dismissal under Rule 12(f). Rather, the challenge to the sufficiency of these factual allegations to support <u>Monell</u> liability under a theory of ratification must come via Rule 12(b)(6) or Rule 56, not Rule 12(f). In short, while it is highly doubtful that plaintiff's <u>Monell</u> claim based on a theory of ratification will survive a Rule 12(b)(6) or Rule 56 challenge, the striking of the factual allegations that plaintiff asserts give rise to <u>Monell</u> liability under Rule 12(f) amounts to a dismissal for failure to state a claim, which is inconsistent with the Magistrate Judge's jurisdiction under 28 U.S.C. § 636(b)(1)(A).

Accordingly, with the exception of paragraph 74 and the "None of this is funny, however" language of paragraph 50, the court **SUSTAINS** plaintiff's objections to the Magistrate Judge's order under Rule 12(f) to strike allegations from the Second Amended Complaint.

The court **DIRECTS** plaintiff to file a Fourth Amended Complaint reflecting the language stricken from paragraphs 50 and 74, to which defendants shall respond pursuant to

Rule 15(a)(3). As such, the Motion to Dismiss the Third Amended Complaint, ECF No. 166,

is **DENIED** as moot.

An appropriate order will be entered.

Entered: June 6, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.06.06 10:32:08
-04'00'

Michael F. Urbanski
Chief United States District Judge